UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ARCHIE MD, INC.,                    :
                                    :
        Plaintiff,                  :
                                    :    16-cv-6614 (JSR)
        -v-                         :
                                    :    OPINION AND ORDER
ELSEVIER, INC.,                     :
                                    :
        Defendant.                  :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

Plaintiff Archie MD, Inc. ("Archie") brings this action against defendant Elsevier, Inc. ("Elsevier") alleging infringement of its copyright in hundreds of 3-D medical animations that it had previously licensed to Elsevier, breach of the parties' license agreement, and misappropriation of its trade secrets. On the parties' cross motions for summary judgment, the Court granted summary judgment to Elsevier on all of Archie's claims save for its claim arising out of Elsevier's alleged derivative use of one of Archie's animations. See Opinion and Order (Mar. 13, 2017) (the "SJ Opinion") at 35, ECF No. 78. Having referred a question bearing on the validity of Archie's copyright registration for that animation to the Register of Copyrights pursuant to Section 411(b)(2) of the Copyright Act, and having received a response that did not definitively resolve the validity of the registration, the Court now once again considers Elsevier's motion for summary judgment with regard to Archie's remaining claim, and, for the reasons explained

1

below, denies the motion and instructs the parties to contact the Court in order to schedule a trial on the remaining claim.

The Court detailed the factual and procedural background of this case in the SJ Opinion. In brief, Archie was founded in 2002 and began to build a library of 3-D animations meant to convey medical principles. Pl.'s Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Pl.'s Rule 56.1 Stmt.") ¶¶ 4-6, ECF No. 38; Def. Elsevier's Local Rule 56.1 Statement of Material Facts Not in Dispute ("Def.'s Rule 56.1 Stmt.") ¶ 1, ECF No. 32.[1] In 2003 and 2004, Archie sought clients to license the entire library. Def.'s Rule 56.1 Stmt. ¶¶ 19-20; Decl. of David Munkittrick in Supp. of Def. Elsevier, Inc.'s Mot. for Summ. J. ("Munkittrick Decl.") Ex. 10 at 26-27, ECF No. 33. To that end, on July 29, 2005, Archie and Elsevier executed the Animation License Agreement ("ALA"), under which Archie granted Elsevier a license to use its library of 3-D medical animations in connection with Elsevier's publications. Pl.'s Rule 56.1 Stmt. ¶¶ 15-16; Def.'s Rule 56.1 Stmt. ¶¶ 17, 35. Cell Differentiation was among the animations licensed in the ALA. See Munkittrick Decl. Ex. 17.

In the ALA, Archie agreed to make the animations available to Elsevier online within five days of the execution of the ALA. Def.'s Rule 56.1 Stmt. ¶ 42. On August 15, 2005, roughly two weeks after

---

[1] All citations to the parties' Local Rule 56.1 Statements, which were submitted with the parties' summary judgment papers, are undisputed in relevant part, unless otherwise noted.

2

the parties had executed the ALA, Archie submitted its first copyright registration for its animations. Id. ¶¶ 94. Archie filed with the Copyright Office a single registration for a collection of unpublished works, which consisted of the animations that Archie had already licensed and delivered to Elsevier pursuant to the ALA. Id. ¶ 92. (Accordingly, the parties do not dispute that Archie licensed and delivered the animations to Elsevier before it sought to register the animations.) The Copyright Office registered the collection with an effective date of registration of August 15, 2005, and assigned the collection registration number PAu 2-985-274 (the "'274 Registration"). See Resp. of the Register of Copyrights to Req. Pursuant to 17 U.S.C. § 411(b)(2) (June 16, 2017) ("Register's Resp.") 2, ECF No. 79.

In June 2014, Elsevier notified Archie that it intended not to renew the ALA, and the final term of the agreement concluded as of July 1, 2015. Pl.'s Rule 56.1 Stmt. ¶ 49; Def.'s Rule 56.1 Stmt. ¶¶ 75, 77. Thereafter, Archie alleged that Elsevier both continued to use hundreds of Archie's animations without authorization and created unauthorized derivative works based on Archie's animations, and it brought this action alleging, inter alia, copyright infringement.

Upon the parties' cross motions for summary judgment, the Court granted summary judgment to defendant Elsevier on almost all of Archie's copyright claims, on the grounds that, so far as authorization was concerned, Elsevier's continued use of Archie's

3

animations was permitted by the terms of the parties' license agreement and that, so far as copyright infringement was concerned, all but two of Elsevier's new animations that were allegedly derived from Archie's animations were not, as matter of law, substantially similar to Archie's animations. See SJ Opinion at 18, 24. However, the Court concluded that a reasonable factfinder might consider two of Elsevier's new animations to be substantially similar to an Archie animation entitled "Cell Differentiation" (the "Work"). Id. at 24.

The Court therefore addressed Elsevier's contention that Archie's infringement claim must be dismissed because Archie did not possess a valid copyright registration covering the Work. Specifically, Elsevier argued that the '274 Registration contained an inaccuracy because the animations registered thereunder were already published at the time Archie licensed them to Elsevier. The Copyright Act contains a mandatory referral provision specifying that "[i]n any case in which inaccurate information [included on a certificate of registration] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2). Accordingly, the Court referred to the Register the question of "whether the fact that Archie had previously licensed its animations to Elsevier before applying to register them in a collection of unpublished works would have caused the Register to refuse registration of the

collection including Archie's animation entitled Cellular Differentiation." SJ Opinion at 30.

On June 16, 2017, the Register provided her response. The Register noted that, "[i]n general, had the [Copyright] Office been aware that the Work had been *published* prior to registration, the Office would have refused registration because the unpublished collections option is limited to unpublished works." Register's Resp. 6. However, she stated that there remained questions as to whether the licensing of the animations effected a publication of the Work. Id. After reviewing this advice, the Court, in order to resolve the disputed issues and rule on Elsevier's motion for summary judgment as to Archie's remaining claim, ordered supplemental briefing from the parties.

Before turning to the parties' arguments, the Court first reviews the applicable legal standards. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a genuine dispute of fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), and, to award summary judgment, the court must be able to find "after drawing all reasonable inferences in favor of a non-movant" that "no reasonable trier of fact could find in favor of that party," Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). A fact is

5

considered material "if it might affect the outcome of the suit under the governing law," and a dispute of fact is deemed "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).

For Archie to prevail on its claim for copyright infringement, it must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc., v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). "[P]roper registration is a prerequisite to an action for infringement." Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d 452, 453 (2d Cir. 1989); see also 17 U.S.C. § 411(a) (providing that, with some exceptions, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title").

The Prioritizing Resources and Organization for Intellectual Property Act of 2008 (the "PRO IP Act"), which amended the Copyright Act, provides that:

> A certificate of registration satisfies the requirements of [section 411] and section 412, regardless of whether the certificate contains any inaccurate information, unless –
>
> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1). The condition listed in clause (B) is not in dispute here because, as noted above, the Register has already advised the Court that the Copyright Office would have refused registration of the Work as part of an unpublished collection had the Office known that the Work was published. See U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 904(5) (3d ed. 2014) [hereinafter "Compendium"] ("Where the applicant seeks registration as an unpublished work and provides the Office with a statement of facts which clearly show that publication has occurred, the Office will not register a claim to copyright in the work as unpublished.").

Therefore, two issues remain in dispute. First, the parties dispute whether Archie indeed included inaccurate information in its copyright registration, which turns on whether Archie had published the Work by licensing it to Elsevier. Second, the parties dispute whether, if the registration included inaccurate information, Archie included the information "with knowledge that it was inaccurate," 17 U.S.C. § 411(b)(1)(A), and, if Archie did not, whether the materiality of the inaccuracy nonetheless means that such knowledge is unnecessary to invalidate a registration under § 411(b)(1).

As to the first of the questions, whether the Work had been published, the Copyright Act defines publication as follows:

> "Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or

7

by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

17 U.S.C. § 101. Elsevier, equating licensing with "rental, lease or lending," contends that Archie's licensing of the Work pursuant to the ALA amounts to publication under the "distribution" prong. See Def. Elsevier, Inc.'s Suppl. Br. Regarding Validity of Archie's Copyright Registration ("Def. Suppl. Br.") 5, ECF No. 80 (citing McLaren v. Chico's FAS, Inc., No. 10 Civ. 2481 (JSR), 2010 WL 4615772, at *2 (S.D.N.Y. 2010) ("By licensing the mannequin illustration to Pucci so that Pucci could produce and sell mannequins based on that drawing, McLaren 'published' the drawing within the meaning of the Copyright Act.")).

Archie, by contrast, contends that licensing the Work does not amount to a distribution "by sale or other transfer of ownership, or by rental, lease, or lending." § 101.[2] That is because, Archie argues, those forms of transfers convey an "exclusive, possessory

---

[2] In its supplemental brief, Archie first argues that Elsevier, as "a single corporate entity," is not "the public," and that Elsevier has conceded as much. See Pl. Archie MD, Inc.'s Suppl. Br. on Copyright Registration Validity ("Pl. Suppl. Br.") 6, ECF No. 81. While Elsevier did not argue, in its initial papers in support of its motion for summary judgment, that the Work was published under the "distribution" prong, neither did Elsevier concede that the Work was not. Nor is Archie correct that a single entity cannot be "the public" for the purposes of the "distribution" prong. See Compendium § 1905.1 ("[P]ublication occurs when one or more copies or phonorecords are distributed to *a member* of the public who is not subject to any express or implied restrictions concerning the disclosure of the content of that work." (emphasis added)). Archie essentially abandons this argument in its reply brief.

8

interest in copies of the work," whereas the ALA's conferral of a license provided Elsevier only a "non-exclusive right to use" the Work. Pl. Archie MD, Inc.'s Resp. to Def. Elsevier, Inc.'s Suppl. Br. Regarding Archie MD's Copyright Registration ("Pl. Reply Br.") 2, ECF No. 83. However, the authority Archie cites in support of this position comes from the context of real property law, which is not directly applicable to the transfer of intellectual property such as copyrighted works. See id. Archie's focus on an "exclusive" possessory interest is thus misplaced, since whether Elsevier alone had a right to reproduce and sell copies of the Work or whether others did as well is immaterial to whether copies of the Work were in fact distributed. See Getaped.com Inc. v. Cangemi, 188 F. Supp. 2d 398, 401 (S.D.N.Y. 2002) (noting that the key factor bearing on whether a work is published through its being posted online is the ability of a user to "gain a proprietary or possessory interest" in the work, but never suggesting that that interest need be exclusive).[3]

Neither the statutory definition of "publication," nor the guidance in the Compendium, nor the case law cited by the parties

---

[3] Archie's argument might be reframed in different terms: what Archie appears to contend is that it did not distribute to Elsevier a copy of the Work in which Elsevier had a possessory interest, but rather simply provided Elsevier the right to make copies of the Work. While the distribution of copies of a work constitutes a publication, assigning the rights to a work may not. See 1 Nimmer § 4.03 n.54 ("[I]t is clear that an assignment *per se* does not constitute publication."). Even within this framework, however, the Court concludes that Archie did distribute a copy, as explained infra.

speaks precisely to the circumstances this case presents. The Court, however, concludes that Archie's licensing and delivery of the Work to Elsevier pursuant to the ALA satisfies the "distribution" prong. The transfer of a digital copy of a work may amount to distribution and therefore publication. See id. at 402 (concluding that the display of a website online amounts to publication because doing so allows a user to view and copy the code used to create it, and, "[c]onsequently, when a website goes live, the creator loses the ability to control either duplication or further distribution of his or her work."). Here, Archie provided Elsevier with a copy of Work along with "a worldwide . . . license to use, reproduce, publish, transmit, and distribute the [Work] . . . in any format or medium, in whole or in part, in and in connection with [Elsevier's] Publications and otherwise." Munkittrick Decl. Ex. 17 ¶ 1.1. While Elsevier had not yet undertaken further distribution of the Work at the time Archie sought registration, the initial transfer of a copy in anticipation of further distribution may nonetheless amount to publication. See M. Nimmer and D. Nimmer, 1 Nimmer on Copyright § 4.13 (2017) [hereinafter "Nimmer"] (noting that "the general principle that a distribution preparatory to ultimate distribution to the public constitutes general publication" was a part of the pre-1978 doctrine).

Moreover, the principles underlying the Copyright Act's definition of publication weigh in favor of concluding that such a transfer is a distribution. Under the regime of the 1909 Copyright

Act, in which publication of a work without proper notice could divest a copyright holder of his or her common law rights, that divestiture was justified in part by the fact that "once an author elected to surrender the privacy of his manuscript, preferring the more worldly rewards that come from exploitation of his work, he had to accept the limitations on his monopoly imposed by the public interest." 1 Nimmer § 4.04.[4] Archie elected to exploit the Work at the time it executed the ALA, and it needed not take any further steps to effect the Work's broader distribution.[5] It is therefore appropriate to find that publication occurred at that time.

Having determined that the Work was published before Archie registered it in a collection of unpublished works, and thus that the '274 Registration contained inaccurate information, the Court turns to the second issue identified above, viz., whether Archie included inaccurate information "with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A). Elsevier contends, however,

---

[4] While publication was not defined in the 1909 Act, the current statutory definition of publication represents a "codification of the definition evolved by case law prior to adoption of the current Act." 1 Nimmer § 4.03.

[5] Archie's argument that the Work was not ready for further distribution, and therefore could not have been published, at the time the ALA was executed is unpersuasive. Archie bases this argument on the fact that, after it provided Elsevier with the animations pursuant to the ALA, it delivered voiceovers meant to accompany the animations. See Pl. Suppl. Br. 8-9. However, Archie does not dispute that those voiceovers were not registered with the animations and, moreover, that it was Elsevier's decision whether or not to include the voiceovers with the animations that accompanied Elsevier's publications. See Def. Suppl. Br. 8-9; Pl. Reply Br. 2 n.1.

11

that the Court need not consider whether Archie had such knowledge, since an "innocent-error defense" cannot save registrations from material errors like the one here. Def. Suppl. Br. 10. That is because, Elsevier argues, inadvertent errors that "render the registrations completely inaccurate" may invalidate a registration. Def. Elsevier, Inc.'s Reply Regarding Validity of Archie's Copyright Registration ("Def. Reply Br.") 4-5, ECF No. 82 (quoting Morris v. Bus. Concepts, Inc., 259 F.3d 65, 72 (2d Cir. 2001) abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010)).

Before the passage of the PRO IP Act, courts tended to excuse inadvertent errors in copyright registrations unless there was "fraud on the Copyright Office," i.e., a knowing misstatement in a registration application. See 2 Nimmer § 7.20[B][1]. Some courts also would not excuse inadvertent but material errors: the Second Circuit indicated that while unintentional "minor technical misdescriptions" in registrations would not provide grounds to dismiss an infringement suit, "errors [that] would render the registrations completely inaccurate" would justify dismissal. Morris, 259 F.3d at 72. With the PRO IP Act, Congress largely "took the court-made standards underlying the previous discussion and articulated the applicable standards directly in the Copyright Act," in part by "providing that, at least prospectively, only knowing errors can serve to invalidate a certificate." 2 Nimmer § 7.20[B][1]-[2]. However, this approach appears to depart from the

12

standard in Morris, which, as noted above, suggested that even inadvertent errors that render registrations "completely inaccurate" justify invalidation.

Elsevier argues that Archie's remaining claim must be dismissed because the registration of a published work as unpublished renders Archie's registration "completely inaccurate." In support of this position, Elsevier relies on Family Dollar Stores, Inc. v. United Fabrics International, Inc., in which the court invalidated the registration of a collection of unpublished works because they had been previously published, concluding that "[t]he PRO IP Act d[id] not apply" because it "solely concerns technical and minor errors with copyright registrations." Id. 896 F. Supp. 2d 223, 233 (S.D.N.Y. 2012). The error in that case was not technical, the court explained, because it "would have clearly caused the Register of Copyrights to refuse to issue a registration." Id.

Yet Family Dollar's conclusion, that the PRO IP Act did not apply because the error in question would have caused the Copyright Office to refuse registration, is hard to square with § 411(b)(1). Family Dollar finds that the condition in clause (B), i.e., the materiality of the inaccuracy, is satisfied, but then takes that conclusion to entail that the condition in clause (A), i.e., the knowledge of the inaccuracy, is irrelevant. But Section 411(b)(1) presents a conjunctive test: both conditions must be satisfied in order for an inaccuracy in a registration to defeat a claim.

13

Accordingly, another court in this district recently disagreed with Family Dollar in addressing whether to refer the matter of an allegedly inaccurate registration -- specifically, the alleged registration of previously published works as unpublished works -- to the Copyright Office under the referral provision contained in § 411(b)(2). See Palmer/kane LLC v. Gareth Stevens Publ'g, No. 1:15-cv-7404 (GHW), 2016 WL 6238612 (S.D.N.Y. Oct. 24, 2016). The court there noted that Family Dollar's "proposition that a showing of fraud is required only when the error is technical rather than material appears to be irreconcilable with the § 411(b)(2) requirement that the Register of Copyrights be consulted regarding whether the inaccuracy is material." Id. at *4 n.2. Similarly, the court in Palmer/kane concluded that Family Dollar's determination "that § 411(b) does not apply at all when the inaccuracy is material . . . seems to be inconsistent with the statute's requirement that the Register of Copyrights weigh in on the issue of materiality in all cases." Id. (emphasis omitted).

For reasons similar to those expressed in Palmer/kane, the Court is persuaded that, in order to comply with the clear directive in § 411(b)(1), a copyright infringement claim should not be dismissed on account of inaccurate information that was inadvertently included in the copyright registration, whether or not the inaccurate information is material.[6]

---

[6] In its briefing, Elsevier suggests that the Court, in the SJ Opinion, agreed with Family Dollar's conclusion that even

14

Elsevier does not provide compelling arguments to the contrary. The case law it cites in support of its position consists exclusively of Family Dollar and cases that follow it, with which, for the reasons stated above, the Court must respectfully disagree, as well as cases that, like Morris, were decided before the enactment of the PRO IP Act in 2008. See Def. Suppl. Br. 9-10; Def. Reply Br. 4-5. Elsevier appeals as well to a treatise on copyright law for the proposition that "[w]hether the material error was deliberate or inadvertent should generally be irrelevant; the only relevant fact is that the error is material." See 5 William F. Patry, Patry on Copyright § 17:125 (2017). However, in context, the author's statement regarding what "should" be relevant is normative, not descriptive. Whatever the merits of that normative position, the text of § 411(b)(1) suggests that Congress came to a different conclusion.

Elsevier also argues, in support of the view that § 411(b)(1) should not excuse the kind of material inaccuracy in a registration that is alleged here, that registration of published works as

---

unintentional material errors may invalidate registrations. This is not correct. Although the SJ Opinion did recite Family Dollar's holding, it did so in the context of distinguishing that case. See SJ Opinion at 29 (stating that "Family Dollar's discussion of the PRO IP Act does not bear directly on the analysis here, as the court there did not discuss the referral provision of § 411(b)(2)," and further noting that making a determination as to the materiality of an error in a registration, as Family Dollar did, "is not the province of the district court when it comes to applying the referral provision of § 411(b)(2)"). As the above discussion makes clear, the Court disagrees with Family Dollar's conclusion.

unpublished cannot be corrected with a supplementary registration. See Compendium § 1402.7. But another section of the Compendium notes that that rule is not absolute, and the stated rationale for the rule concerns the differing requirements for deposit copies filed in connection with published and unpublished works. See id. § 1802.7(C). Nowhere in its supplemental briefing does Elsevier discuss the text of § 411(b)(1)(A), and for good reason: that text compels the result that the dismissal of a claim on account of the inclusion of inaccurate information in a registration is not justified if the information was included inadvertently.

Elsevier attempts to argue on reply that "there is no question that Dr. Levine knew *at the time of registration* the facts that precluded registration of *Cell Differentiation* as unpublished," viz., the license and delivery of the animations to Elsevier. Def. Reply Br. 5 (emphasis in original). But knowledge of the fact that the animations were licensed does not entail that "the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A). That conclusion would require another premise: that Levine knew licensing constituted publication. See Palmer/kane, 2016 WL 6238612 at *4 (noting that the plaintiff "might not have subjectively known the information that she included on the application form was inaccurate" for the purposes of Section 411(b)). From the foregoing discussion of publication, it is apparent that whether the Work had been published by virtue of its

16

licensing to Elsevier was an unsettled legal question at the time Levine sought to register the animations. The Court therefore holds that there is no dispute that Levine did not state that the animations in the collection were unpublished "with knowledge that [that information] was inaccurate." 17 U.S.C. § 411(b)(1)(A).

In sum, the Court concludes that, while the '274 Registration contained inaccurate information in that it described as unpublished a work that had already been published by virtue of its licensing and delivery to Elsevier, such inaccurate information was not included with knowledge that it was inaccurate, and therefore, under 17 U.S.C. § 411(b)(1), that registration may serve as a prerequisite for Archie's remaining copyright claim. The Court therefore denies Elsevier's motion for summary judgment as to that claim, and it directs the parties to convene a joint telephone call to Chambers no later than August 25, 2017, to discuss the scheduling of a trial on the remaining claim.

SO ORDERED.

Dated: New York, NY
August 20, 2017

JED S. RAKOFF, U.S.D.J.